Loretta BURRELL, Linda L. Brown, Catherine McAfee, John Grant, John McDowell, Phyllis Miller, Susan Robertson, and Karen Sloan, Individually and on behalf of those similarly situated, Plaintiffs,

v.

CROWN CENTRAL PETROLEUM, INC., Defendant.

No. 1:97–CV–357.

United States District Court, E.D. Texas, Beaumont Division.

Nov. 21, 2000.

Thomas Walter Umphrey, James Erick Payne, Provost & Umphrey, Beaumont, TX, Michael D. Hausfeld, Victoria C. Arthaud, Joseph M. Sellers, Cohen, Milstein, Hausfeld & Toll, Washington, DC, Reuben A. Guttman, Brian P. McCafferty, Charles V. Firth, Provost & Umphrey, Washington, DC, Cyrus Mehri, Pamela Coukos, Mehri, Malkin & Ross, Washington, DC, for plaintiffs.

James V. Carroll, III, Mark E. Schwartz, Anne Gibson Bruckner, Littler, Mendelson, Houston, TX, for defendant.

## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

SCHELL, District Judge.

Before the court is Plaintiffs' Motion for Class Certification, filed on April 12, 1999. Defendant filed its Opposition to Plaintiffs' Motion for Class Certification on June 24, 1999, and Plaintiffs' Reply in Support of Their Motion for Class Certification was filed on July 13, 1999. The court, having considered the motion, opposition and reply to the same, is of the opinion that Plaintiffs' Motion should be DENIED.

### I. BACKGROUND

On June 30, 1997, eight individual plaintiffs brought suit against Crown Central Petroleum, Inc. ("Crown") on behalf of themselves and other similarly situated employees, seeking declaratory and injunctive relief as well as compensatory and punitive damages. Through their complaint, Plaintiffs assert that Crown unlawfully discriminated against them on the basis of their race and/or sex in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–5, et seq. ("Title VII") and the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1981 ("Section 1981"). Specifically, Plaintiffs contend that Crown "cultivated an environment that is openly hostile to African–American and female employees." [Complaint at 1–2] Plaintiffs

claim that, among other things, Crown's supervisors often used racial epithets when referring to African–American employees and that supervisors "routinely create, distribute, and post handbills in the workplace" that are offensive and demeaning to African–American and female employees.[1] [*Id.* at 2] To redress Crown's alleged "pattern and practice" of discrimination, Plaintiffs seek declaratory, injunctive, and monetary relief, including compensatory and punitive damages. [*Id.* at 33] In addition, Plaintiffs have requested a jury trial.

## II. THE INSTANT MOTION

On April 12, 1999, Plaintiffs filed this Motion for Class Certification. Plaintiffs seek to certify a class of "All African–American and/or female persons employed at any Crown Central Petroleum facility in Texas at any time from June 30, 1995 to present, who have been or continue to be subjected to a hostile work environment based on race and/or sex." [Pls.' Mot. for Class Certification at 1][2] In support of their Motion, Plaintiffs argue that this putative class should be certified as it meets all of the requirements of Rules 23(a) and (b)(2) and (b)(3) of the Federal Rules of Civil Procedure. [*See* Pls.' Mem. of P. & A. in Supp. of Their Mot. for Class Certification] Crown, on the other hand, opposes class certification, arguing that Plaintiffs cannot satisfy the requirements of Rule 23(a) or (b) because proof of liability and damages in a hostile work environment case necessarily requires individualized proof of harm and, thus, certification under (b)(2) or (b)(3) would be inappropriate. [*See* Def's Br. in Opp'n to Pls.' Mot. for Class Certification at 78–98] To support its argument, Crown relies on the Fifth Circuit's recent decision in *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir.1998) wherein the Court affirmed a district court's denial of class certification based on facts and circumstances similar to the instant case. Because the court finds *Allison* to be dispositive of Plaintiffs' Motion for Class Certification, the Motion will be denied.

## III. LEGAL STANDARD

■ It should be noted that a district court has broad discretion in deciding whether to certify a class action. *See Allison v. Citgo Petroleum Corp.*, 151 F.3d at 408. "Implicit in this deferential standard is a recognition of the essentially factual basis of the certification inquiry and of the district court's inherent power to manage and control pending litigation." *Id.* Even so, the court must vigorously analyze the requirements of Rule 23 before certifying a class. *See Castano v. American Tobacco Co.*, 84 F.3d 734, 740 (5th Cir.1996) (citing *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)). In other words, although the district court has broad discretion in deciding whether to certify a class, that discretion must be exercised within the framework of Rule 23. *See id.* (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981)). To make the certification decision, the court must consider the substantive law that will govern the outcome of the trial. *See Alabama v. Blue Bird Body Co., Inc.*, 573 F.2d 309, 316 (5th Cir.1978). While the court will not consider the merits of the Plaintiffs' claims at the certification stage, *see Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), the court may look past the pleadings to the record and any other completed discovery to make the certification decision. *See Falcon*, 457 U.S. at 160, 102 S.Ct. 2364; *Castano*, 84 F.3d at 744. It should be noted that the party seeking certification bears the burden of proof. *See Horton v. Goose Creek Ind. Sch. Dist.*, 690 F.2d 470, 486 (5th Cir.1982). With these

---

1. A detailed account of the facts and allegations surrounding this lawsuit can be found in this court's previous orders. *See Burrell v. Crown Cent. Petroleum, Inc.*, 177 F.R.D. 376 (E.D.Tex. 1997); *Burrell v. Crown Cent. Petroleum, Inc.*, 176 F.R.D. 239 (E.D.Tex.1997).

2. Initially, Plaintiffs sought to include a classwide promotions claim as part of their motion for class certification. [Pls.' Mot. for Class Certi-

fication at 1] Following the withdrawal of Dr. Charles R. Mann's expert report [*See* Pls.' Resp. to Crown's Mot. to Strike With Prejudice Against. Refiling the Report and Testimony of Dr. Charles Mann], however, Plaintiffs dropped their class wide promotions claim and now seek to certify a class focusing entirely on the hostile work environment claim. [*See* Pls.' Reply in Supp. of Their Mot. for Class Certification at 4 n.3]

principles in mind, the court turns to consider the merits of Plaintiffs' motion for class certification.

## IV. DISCUSSION

A class action may be maintained as such only if it satisfies all of the requirements of Rule 23(a) and at least one of the alternative requirements of Rule 23(b). *See Allison*, 151 F.3d at 411. Rule 23 of the Federal Rules of Civil Procedure provides, in part:

> (a) *Prerequisites to a Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

> (b) *Class Action Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

> \*     \*     \*     \*     \*     \*

> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

The court will assume, without deciding, that Plaintiffs have satisfied all of the requirements of Rule 23(a). Whether Plaintiffs' proposed class is appropriate for certification under either Rule 23(b)(2) or (b)(3) will, therefore, be the focus of the remainder of this opinion.

Plaintiffs move for class certification under either Rule 23(b)(2) or 23(b)(3) (or a hybrid of the two), arguing that the court would be within its discretion in certifying the putative class under either provision. Crown, on the other hand, argues that because of the Fifth Circuit's decision in *Allison*, and its similarities to the instant case, Plaintiffs cannot maintain a class action under any of Rule 23(b)'s provisions.

The court agrees that the issues in the instant case are similar, if not identical, to those addressed by the Fifth Circuit in *Allison*.[3] In that case, numerous plaintiffs filed an employment discrimination class action lawsuit against their employer, Citgo Petroleum Corporation ("Citgo"), on behalf of themselves and similarly situated African–American employees and job applicants. The suit alleged that Citgo engaged in class-wide racial discrimination with respect to general hiring, promotion, compensation, and training policies at its manufacturing facilities in Lake Charles, Louisiana. The plaintiffs challenged these policies under disparate impact and disparate treatment theories of discrimination. To remedy the alleged

---

**3.** Plaintiffs take the position that the subsequent history in *Allison* "eviscerates" the precedential value of the opinion with respect to Rule 23. [*See* Pls. Reply in Supp. of Their Mot. for Class Certification at 39] At best, Plaintiffs argue, the Court's lengthy decision has been reduced to mere dicta. To support their position, Plaintiffs point to the Fifth Circuit's denial of the plaintiffs' petition for panel rehearing wherein the Court stated:

> In denying rehearing, the panel majority makes the following observation: The trial court utilized consolidation under rule 42 rather than class certification under rule 23 to manage this case. We review that decision for abuse of discretion and we find no abuse in this case. We are not called upon to decide

whether the district court would have abused its discretion if it had elected to bifurcate liability issues that are common to the class and to certify for class determination those discrete issues.

*Allison*, 151 F.3d at 434.

Plaintiffs are correct in that *Allison* should not be understood as establishing a bright-line rule that class certification is *per se* improper in employment cases where plaintiffs seek monetary damages. Indeed, a decision on class certification remains a fact specific determination. *Falcon*, 457 U.S. at 160, 102 S.Ct. 2364. Having said that, this court does not agree that the order denying panel rehearing reflects a retreat from the opinion in *Allison*.

violations, the plaintiffs sought injunctive, declaratory, and monetary relief, including compensatory and punitive damages. In addition, the plaintiffs demanded a jury trial on their claims of intentional discrimination. *See id.* at 407–08.

The plaintiffs moved for class certification under Rule 23 of the Federal Rules of Civil Procedure, which Citgo opposed. The district court referred the plaintiffs' motion for class certification to a magistrate judge, who conducted an evidentiary hearing and determined that, although the proposed class met the requirements of rule 23(a), it could not be certified under any alternative provided in 23(b). In regards to Rule 23(b)(2), the magistrate judge determined that certification required that injunctive or declaratory relief be the "predominate" form of relief sought by the plaintiffs. Because money damages predominated over injunctive or declaratory relief, the magistrate judge found certification under 23(b)(2) inappropriate. The judge concluded that the individualized nature of the damages claims and the consequent need for individualized proof rendered plaintiffs' money damages not sufficiently incidental to the injunctive relief. Likewise, the magistrate judge declined to certify the class under 23(b)(3) because the need for individualized damages determinations caused individual issues to predominate over common ones and that class action would not be a superior method for fair and efficient adjudication of the controversy. *See id.* at 408. Finally, the magistrate judge contemplated bifurcating the trial into liability and damages stages and certifying the class only on the claims for injunctive relief. The court declined to do so, however, after expressing concern over Seventh Amendment complications arising out of proceeding with multiple fact finders and the difficulty in separating liability and damages issues in discrimination cases. *See id.* The district court adopted the magistrate judge's report and recommendation in its entirety and denied class certification. *See id.* The plaintiffs appealed the district court's ruling.

In affirming the district court's denial of class certification, the Fifth Circuit noted that "[i]n years past we have routinely upheld certification of class actions to resolve Title VII cases involving disparate impact and pattern and practice claims of discrimination." *Id.* at 409. Nevertheless, according to the Court, the Civil Rights Act of 1991 brought about fundamental changes in both the procedures and remedies available to Title VII litigants. *Id.* at 409. Chief among them are the right to seek compensatory and punitive damages and the right of either party to demand a jury trial. *See* 42 U.S.C. § 1981a(a)(1) and § 1981a(c). The Court explained that:

> By bringing additional monetary claims within the scope of intentional discrimination cases, the Civil Rights Act of 1991 added to the complexity and diversity of the issues to be tried and decided. By injecting jury trials into the Title VII mix, the 1991 Act introduced, in the context of class actions, potential manageability problems with both practical and legal, indeed constitutional, implications.

*Id.* at 410. With this in mind, this court turns to consider whether certification is proper under Rule 23(b)(2) or (b)(3).

A. CERTIFICATION UNDER RULE 23(b)(2)

Although Plaintiffs move for certification under both Rule 23(b)(2) and (b)(3), they contend that "23(b)(2) provides the most appropriate basis for certification of all of the class claims." According to the Federal Rules of Civil Procedure, certification is proper under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole[.]" FED. R. CIV. P. 23(b)(2). As previously mentioned, Plaintiffs allege that Crown engaged in a "pattern or practice" of intentional discrimination by creating and maintaining a work environment that is hostile towards African–American and female employees. To remedy this alleged violation, Plaintiffs seek, among other things, compensatory and punitive damages in addition to injunctive and declaratory relief. Crown argues that certification under (b)(2) is inappropriate because monetary relief is the predominant form of relief sought by Plaintiffs.

According to the Fifth Circuit, class certification under (b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominately to money damages." *Allison*, 151 F.3d at 411 (quoting FED. R. CIV. P. 23 (advisory committee notes)). In other words, "monetary relief may be obtained in a (b)(2) class action so long as the predominant relief sought is injunctive or declaratory." *Id.* Furthermore, "monetary relief predominates in (b)(2) class actions unless it is *incidental* to requested injunctive or declaratory relief." *Id.* at 415 (emphasis added). To be incidental, damages must be such that they "flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief." *Id.* Such damages "should at least be capable of computation by means of objective standards and not dependant in any significant way on the intangible, subjective differences of each class member's circumstances." *Id.* Moreover, "[l]iability for incidental damages should not require additional hearings to resolve the disparate merits of each individual case; it should neither introduce new and substantial legal and factual issues, nor entail complex individualized determinations." *Id.* Thus, "incidental damages will, by definition, be more in the nature of a group remedy . . . ." *Id.*

Plaintiffs argue that their claims for compensatory and punitive damages are incidental to their request for injunctive and declaratory relief. To support their argument, Plaintiffs assert that the "major issue" in this case is whether Crown engaged in a pattern or practice of discriminatory conduct and, therefore, issues common to the claims for injunctive or declaratory relief predominate. In addition, Plaintiffs contend that because they do not intend to present medical or psychiatric evidence related to each class member's claim of emotional distress, their compensatory damages claims are "clearly" incidental to the class-wide injunctive relief.

### 1. COMPENSATORY DAMAGES

Like the *Allison* court, this court begins with the premise that "in this circuit, compensatory damages for emotional distress and other forms of intangible injury will not be presumed from mere violation of constitutional or statutory rights" *Id.* at 416–17 (citing *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 938–40 (5th Cir.1996)). "Compensatory damages may be awarded only if the plaintiff submits proof of actual injury, often in the form of psychological or medical evidence, or other corroborating testimony form a third party." *Id.* Moreover, "[s]pecific individualized proof is necessary, and testimony from the plaintiff alone is not ordinarily sufficient." *Id.* Therefore, although Plaintiffs have made clear that they do not intend to introduce any medical or psychological evidence related to their claims for emotional harm, it is clear that, to recover compensatory damages, Plaintiffs must present evidence showing actual injury.

In *Allison*, the Court held that "compensatory damages under Title VII and 42 U.S.C. § 1981 are not incidental to class-wide injunctive or declaratory relief for discrimination." *Id.* at 417. The court explained that "[t]he amount of compensatory damages to which any individual plaintiff may be entitled cannot be calculated by objective standards." *Id.* Moreover, "by requiring individualized proof of discrimination and actual injury to each class member, compensatory damages introduce new and substantial legal and factual issues." *Id.* In the end, the Court concluded that "[t]he very nature of these damages, compensating plaintiffs for emotional and other intangible injuries, necessarily implicates the subjective differences of each plaintiff's circumstances." *Id.* at 417.

### 2. PUNITIVE DAMAGES

Plaintiffs argue that their punitive damages claims, like their compensatory damages claims, are incidental to their request for injunctive and declaratory relief. Here, Plaintiffs suggest that punitive damages maybe awarded on a class-wide basis because the entire class was subjected to the same hostile work environment. In addition, Plaintiffs argue that they were "universally harmed" by Crown's inadequate response to Plaintiffs' complaints and by retaliation against those who brought harassment to Crown's attention.

In addressing the punitive damages issue, the *Allison* court concluded that claims for punitive damages were similarly non-incidental to injunctive or declaratory relief. *See id.* In reaching this conclusion, the court noted that:

> Punitive damages cannot be assessed merely upon a finding that the defendant engaged in a pattern or practice of discrimination. Such a finding establishes only that there has been general harm to the group and that injunctive relief is appropriate. Actual liability to individual class members, and their entitlement to monetary relief, are not determined until the second stage of the trial. And because punitive damages must be reasonably related to the reprehensibility of the defendant's conduct and to the compensatory damages awarded to the plaintiffs, recovery of punitive damages must necessarily turn on the recovery of compensatory damages.

*Id.* at 418. From this, the Court reasoned that because punitive damages "... are dependant on nonincidental compensatory damages, punitive damages are also non-incidental—requiring proof of how discrimination was inflicted on each plaintiff, introducing new and substantial legal and factual issues, and not being capable of computation by reference to objective standards." *See id.* at 418.

■ Like the plaintiffs in *Allison*, Plaintiffs' request for compensatory and punitive damages would necessarily require this court to inquire into the individual circumstances of each plaintiffs' claims. To date, there are eight named plaintiffs in two separate facilities, each claiming specific instances of harassment by several different individuals. Moreover, Plaintiffs' hostile environment claims differ significantly in degree and length of exposure. Despite all of this, Plaintiffs still claim that the compensatory and punitive damages sought in this case are capable of objective determination. This court disagrees. As the Fifth Circuit stated in Allison, "[s]uch damages, awarded on the basis of intangible injuries and interest, are uniquely dependant on the subjective and intangible differences of each class member's

individual circumstances." *Id.* at 418. Moreover, these are not the type of damages that flow directly from liability to the class as a whole. It would be unfair, to say the least, for those plaintiffs who may have suffered more severe discrimination over a longer period of time to have their damages divided equally among the class as a whole. This is especially true here given that certification under Rule 23(b)(2) provides no absolute right to opt-out once a class is certified. Based on the foregoing, the court is of the opinion that Plaintiffs' claim for monetary relief predominates over their request for injunctive and declaratory relief and, thus, certification under Rule 23(b)(2) would be inappropriate.

### B. CERTIFICATION UNDER RULE 23(b)(3)

In addition to certification under Rule 23(b)(2), Plaintiffs also seek certification under Rule 23(b)(3). Under Rule 23(b)(3), class certification is proper where "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3). Whether common issues predominate and whether class action is a superior method to resolve the controversy requires an understanding of the relevant claims, defenses, facts, and substantive law presented in the case. *See Castano*, 84 F.3d at 744.

Plaintiffs argue that certification under 23(b)(3) is proper because common issues relating to a class-wide "pattern or practice" of discrimination clearly predominate over issues related to the recovery of compensatory and punitive damages. In *Allison*, however, the Court rejected a similar argument after concluding that a plaintiff's claims for compensatory and punitive damages would require case specific inquiries into the special circumstances of each case, and that the success of Plaintiffs' claims would turn, not on whether the defendant engaged in a pattern or practice of discrimination, but ultimately on facts of each individual's case. *See id.* at 420 (applying the same logic used in *Jackson*

v. *Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1006 (11th Cir.1997)).

In addition, the Court concluded that the "predominance of individual-specific issues relating to the plaintiffs' claims for compensatory and punitive damages in turn detracts from the superiority of the class action device in resolving these claims." *Id.* at 419. The Court also recognized that potential Seventh Amendment problems could arise from the possibility of bifurcated proceedings before multiple juries, which also decreases the superiority of the class action device.[4] *Id.* Finally, the Court observed that the " 'most compelling rationale for finding superiority in a class action—the existence of a negative value suit,' is missing in this case." *Id.* at 420 (citing *Castano*, 84 F.3d at 748.). The Court found that "[t]he relatively substantial value of these claims (for the statutory maximum of $300,000 per plaintiff) and the availability of attorney's fees eliminate financial barriers that might make individual lawsuits unlikely or infeasible." *Id.* at 420; *see also Boggs v. Alto Trailer Sales*, 511 F.2d 114, 118 (5th Cir.1975) (acknowledging that the availability of attorney's fees is a common basis for fording non-superiority).

In the instant case, Plaintiffs are confronted with problems identical to those that plagued the plaintiffs in *Allison*. As previously noted, to recover compensatory damages for mental anguish or emotional harm in a case brought under Title VII or Section 1981, Plaintiffs must present evidence establishing that each plaintiff suffered actual injury. *See supra* p. 289. This would require the court to engage in a highly individualized inquiry into the specific circumstances of each plaintiff's claims. Although Plaintiffs contend that their hostile work environment focuses primarily on objective factors, the success of Plaintiffs' claims will rest, not on whether Crown engaged in a pattern or practice of discrimination, but ultimately on the resolution of these highly case-specific issues. As a result, issues common to the class as a whole are subordinate to the specific circum-stances surrounding each individual plaintiff's claim for compensatory and punitive damages.

In addition, the court is of the opinion that the class action device is not a superior method for resolving Plaintiffs' claims. In this regard, the predominance of the individual-specific damages issues makes class action a less attractive vehicle for resolving these claims. By Plaintiffs' own estimates, there are 170 potential class members who may have been subjected to a hostile environment in one way or another by Crown's supervisors and/or employees. In light of the fact that these potential class members may also seek to recover compensatory and punitive damages, which requires individualized and independent proof of injury, there is a substantial danger that a Trial begun as a class action would "degenerate in practice into multiple lawsuits separately tried." *Castano*, 84 F.3d at 745 n. 19 (citing FED. R. CIV. P. 23 (advisory committee notes)).

■ Plaintiffs also argue that class action is superior because it is the only feasible method available to these plaintiffs as most of them "are in a poor position to seek legal redress, either because they do not know enough or because such redress is disproportionately expensive." [*See* Pls.' Br. in Supp. of Their Mot. for Class Certification at 68] (citing *Dolgow v. Anderson*, 43 F.R.D. 472, 484–85 (E.D.N.Y.1968)). But as the Court recognized in *Allison*, the most compelling reason for finding superiority in a class action—the existence of a negative value suit—is absent from most Title VII and Section 1981 cases. *See supra* pp. 290–91. The Court specifically noted that "[t]he relative substantial value of these claims ... and the availability of attorney's fees eliminate financial barriers that might make individual lawsuits unlikely or infeasible." *Allison*, 151 F.3d at 420. For the reasons set forth above, the court is of the opinion that a class action is not superior to other available meth-

---

4. The Seventh Amendment to the United States Constitution provides:
   In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by jury shall be otherwise reexamined in any court of the United States, than according to the rules of the common law. U.S. Const. Amend. VII.

ods for the fair and efficient adjudication of Plaintiffs' claims.

## B. PLAINTIFFS' PROPOSED TRIAL PLAN

Finally, Plaintiffs have proposed a trial plan that they contend should eliminate any concerns the court may have in deciding whether to certify the putative class under Rule 23(b)(2) or (b)(3). Under Plaintiffs' proposed plan, the court is invited to certify the class only on the issues of classwide liability (i.e., whether Crown engaged in a pattern or practice of discrimination) and punitive damages, leaving the court to rule on class-wide injunctive relief. Assuming that liability is established, then individual jury trials could be used to determine the extent of compensatory damages for any class member who desires to seek such damages.

For the following reasons, this plan does not pass muster under either 23(b)(2) or (b)(3). The court has already determined that Plaintiffs' claims for punitive damages are non-incidental to their claims for injunctive or declaratory relief. *See supra* pp. 289–90. That being so, Plaintiffs' trial plan is still inadequate for certification under 23(b)(2). Likewise, certification may not be had under 23(b)(3) for two reasons. First, "[p]unitive damages cannot be assessed merely upon a finding that the defendant engaged in a pattern or practice of discrimination." *Allison*, 151 F.3d at 417. The recovery of punitive damages rests upon the specific circumstances of each individual plaintiff's case. *See id.* at 418. And as the court has already explained, "[t]he predominance of individual-specific issues relating to the plaintiffs' claims for ... punitive damages ... detracts from the superiority of the class action device in resolving these claims." *Id.* at 419. Second, "because punitive damages must be reasonably related to the reprehensibility of the defendant's conduct and to the compensatory damages awarded to the plaintiffs, recovery of punitive damages must necessarily turn on

the recovery of compensatory damages." *Id.* at 418. In light of this relationship, it would be difficult to avoid violating the Seventh Amendment if the court were to move forward with Plaintiffs' plan and allow one jury to pass on the issue of punitive damages while allowing potentially hundreds of subsequent juries to decide whether and to what extent each individual plaintiff is entitled to compensatory damages. On this basis alone, Plaintiffs' trial plan is not a superior method of resolving this controversy.[5]

## V. CONCLUSION

It is clear after *Allison* that the issue of class certification is to be determined by very different considerations under the Civil Rights Act of 1991. The inclusion of compensatory and punitive damages and the right of either party to demand a jury trial have added to the complexity and diversity of issues to be tried and decided. In view of these fundamental changes and their application to this case, the court is of the opinion that Plaintiffs' Motion for Class Certification should be DENIED. It is so ORDERED.

---

5. In addition to the Seventh Amendment concerns, the court is simply not comfortable with what amounts to piecemeal certification of a class action. As the Court explained in *Castano*, "[r]eading rule 23(c)(4) as allowing a court to sever issues until the remaining common issue predominates over the remaining individual issues would eviscerate the predominance requirement of rule 23(b)(3); the result would be automatic certification in every case where there is a common issue, a result that could not have been intended." 84 F.3d at 745 n. 21.