**Michael ROCKEY, et al., Plaintiffs,**

v.

**COURTESY MOTORS, INC., Defendant.**

No. 1:00CV695.

United States District Court,
W.D. Michigan,
Southern Division.

March 13, 2001.

Phillip C. Rogers, Grand Rapids, MI, for plaintiffs.

Michael D. Wade, Garan, Lucow, Miller & Seward, PC, Grand Rapids, MI, for defendant.

### OPINION

SCOVILLE, United States Magistrate Judge.

This is an action brought by purchasers of a used truck against the dealership, which sold them an extended warranty as part of the transaction. Plaintiffs Michael Rockey and Terry Rockey, husband and wife, are residents of Kent County, Michigan. Plaintiffs allege that on August 15, 2000, they purchased a 1997 Chevrolet Blazer from defendant Courtesy Motors, Inc., doing business in Kent County as Courtesy Dodge. Plaintiffs purchased an extended warranty on the Blazer. On the retail installment contract, under "amounts paid to others," $1,590 was listed as the price of the extended warranty. Plaintiffs contend that defendant never paid the full $1,590 to any third party, but retained hundreds of dollars for itself as a "secret profit." The amount retained by a car dealer on the sale of extended warranties (also known as vehicle service contracts) is

referred to as an "upcharge." Plaintiff's first amended complaint asserts that defendant's improper itemization violated the Federal Truth in Lending Act (TILA), 15 U.S.C. § 1638(a)(2)(B)(iii). Plaintiffs also claim that defendant's actions violated numerous state laws: Michigan Consumer Protection Act (MCPA), MICH. COMP. LAWS § 445.901, *et seq.;* Michigan Motor Vehicle Installment Sales Contracts Act (MVISCA), MICH. COMP. LAWS § 556.301, *et seq.,* Michigan Motor Vehicle Sales Finance Act (MVSFA), MICH. COMP. LAWS § 492.101, *et seq.,* and the Michigan Credit Reform Act (MCRA), MICH. COMP. LAWS § 445.1851, *et seq.* Plaintiffs seek monetary damages, as well as declaratory and injunctive relief.

In October 2000, pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties voluntarily consented to have a United States Magistrate Judge conduct all further proceedings in this case, including entry of final judgment. (docket # 7). The matter is now before the court on plaintiffs' motion for class certification pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure. (docket # 15). Defendant has filed a brief in opposition to plaintiffs' motion (docket # 16). Plaintiffs have filed a reply brief. (docket # 20). On February 21, 2001, the court conducted a hearing on the motion. For the reasons set forth below, the court finds that plaintiffs satisfy the requirements of Rule 23(a) but not Rule 23(b). Plaintiffs' motion for class certification will be denied.

### *Facts*

The facts forming the basis of plaintiffs' complaint are remarkably simple. On August 15, 2000, plaintiffs Michael Rockey and Terry Rockey purchased a 1997 Chevrolet Blazer from defendant Courtesy Motors, Inc., doing business in Kent County as Courtesy Dodge. Plaintiffs purchased an extended warranty on the Blazer. Under "amounts paid to others" the Automobile Retail Installment Contract listed the amount of $1,590 for the extended warranty. (docket # 16, Ex. 2). It appears undisputed that defendant did not pay the entire amount to a third party, but retained $715.00 for itself as a fee or commis-

sion. Plaintiffs seek monetary damages, attorneys fees, injunctive and declaratory relief.

Plaintiffs seek to represent the following class: "(A) All persons who executed a retail installment sales contract for the purchase of a motor vehicle from Courtesy Motors, Inc.; (B) in a transaction that included a vehicle service contract; (c) where the retail installment sales contract stated that the full purchase price of the vehicle service contract would be paid to others on the purchaser's behalf; (d) and where the retail installment sales contract failed to disclose that a portion of the purchase price of the vehicle service contract would be retained by Courtesy Motors, Inc.; and (e) where a portion of the purchase price of the vehicle service contract was in fact retained by Courtesy Motors, Inc." (First Amended Complaint, ¶ 13, docket # 13). The proposed class period in connection with plaintiffs' TILA claim would be the one-year period immediately preceding September 18, 2000, the date plaintiffs filed their complaint. Plaintiffs propose the six-year period preceding September 18, 2000 for their state-law claims. (First Amended Complaint, ¶ 14).

### *Discussion*

The case is presently before the court on plaintiffs' motion for class certification. (docket # 15). Rule 23(c)(1) states that as soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. FED. R. CIV. P. 23(c)(1). "The class action device was designed as an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *General Telephone Co. of the Southwest v. Falcon,* 457 U.S. 147, 155, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). District courts have broad discretion in certifying and managing class actions. *See Califano v. Yamasaki,* 442 U.S. 682, 703, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979); *Stout v. J.D. Byrider,* 228 F.3d 709, 716 (6th Cir.2000); *Weaver v. University of Cincinnati,* 970 F.2d 1523, 1531 (6th Cir. 1992); *Watkins v. Simmons & Clark, Inc.,* 618 F.2d 398, 402 (6th Cir.1980). A class

action may not be certified unless the trial court is satisfied, after "rigorous analysis," that the prerequisites of Rule 23(a) have been met and that the action falls within one of the three categories of Rule 23(b). *See General Telephone Co.*, 457 U.S. at 161, 102 S.Ct. 2364; *Stout*, 228 F.3d at 717. "Rule 23(a) states four threshold requirements applicable to all class actions." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997);[1] *see Stout*, 228 F.3d at 717. "In addition to satisfying Rule 23(a)'s prerequisites, parties seeking certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem*, 521 U.S. at 614, 117 S.Ct. 2231. Plaintiffs bear the burden of proving that they satisfy all prerequisites for class certification. *Thompson v. County of Medina*, 29 F.3d 238, 241 (6th Cir.1994).

## I. Rule 23(a)

The court's analysis begins with an examination of the Rule 23(a) prerequisites as applied to plaintiffs' only federal claim, the alleged TILA violation.

> (a) PREREQUISITES TO A CLASS ACTION. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a). These prerequisites are generally referred to as numerosity, commonality, typicality, and adequacy of representation.

### A. *Numerosity*

■ The first prerequisite under Rule 23(a) is that "the class is so numerous that joinder of all members is impracticable." According to the Supreme Court, "The nu-

merosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *General Tel. Co. of Northwest, Inc. v. EEOC*, 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). To satisfy the numerosity requirement, the plaintiffs must show that joinder is impracticable, not impossible. *See Schwartz v. Dana Corp.*, 196 F.R.D. 275, 279 (E.D.Pa.2000); *Hively v. Northlake Foods, Inc.*, 191 F.R.D. 661, 666 (M.D.Fla.2000). In determining whether joinder is impracticable, the court must consider the size of the proposed class, the class's geographical dispersion, the ability of claimants to bring individual suits, and whether the members' names are easily ascertainable. *See Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir.1993); *see also, Hum v. Dericks*, 162 F.R.D. 628, 634 (D.Haw.1995) (applying these factors, noting there is "no magic number," declining to certify 200 member class and collecting cases where class certification was denied to larger proposed classes). Plaintiffs are not required to specify the exact number of persons in the class, but cannot rely on conclusory allegations that joinder is impractical. Mere speculation as to the number of parties involved is not sufficient to satisfy Rule 23(a)(1). *See Jiang v. Allstate Ins. Co.*, 199 F.R.D. 267, 269 (N.D.Ill.2001).

■ In this instance, plaintiffs attempt to rely on a letter from defendant's attorney to plaintiffs' counsel dated November 17, 2000. The letter is obviously hearsay, but defendant has not objected to plaintiffs' use of this document and defendant has waived any objection on that basis. In any event, courts have held that on a motion for class certification, the evidentiary rules are not strictly applied and courts can consider evidence that may not be admissible at trial. *See Force v. ITT Hartford Life & Annuity Ins. Co. (In re Hartford Sales Practices Lit.)*, 192 F.R.D. 592, 597 (D.Minn.1999). The letter identifies the total number of new

---

1. Plaintiffs' brief cites older cases such as *King v. Kansas City Southern Indus.*, 519 F.2d 20 (7th Cir.1975), for the broad proposition that Rule 23 must be "liberally construed" and read "to favor class actions." Recent Supreme Court cases dis-

cussed herein show that Rule 23 must be construed neither liberally nor grudgingly, but carefully applied in accordance with its express terms.

and used car sales from 1997 through September 18, 2000, in which an extended warranty was sold using an installment contract that did not disclose that a portion of the charge would be retained by the dealer.

| Year | Transactions |
|------|------------|
| 1997 | 339 |
| 1998 | 170 |
| 1999 | 151 |
| 2000 | 61 |

(Plf. Brief, Ex. D, docket # 15). TILA imposes a one-year statute of limitations. · 15 U.S.C. § 1640(e). The class period proposed by plaintiff is the one-year period immediately preceding September 18, 2000, the date plaintiffs filed their complaint. The letter relied upon by plaintiffs does not specifically address the relevant sales during the period from September 18, 1999 to and including September 18, 2000. The total number is clearly something under 212.

The size of the putative class is not determinative of the numerosity question. The "real inquiry" under Rule 23(a)(1) is "whether joinder would be impractical." *Daigle v. Shell Oil Co.*, 133 F.R.D. at 603. "A relatively small class may be certified if joinder is impractical. However, the converse must also be true for relatively large classes; certification may be denied if all·plaintiffs can be joined." *Id.* Determination of practicability of joinder depends on "all the circumstances surrounding a case, not on mere numbers." *Robidoux v. Celani*, 987 F.2d at 936. Relevant considerations include judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and the like. *Id.*

The number of putative class members in the present case is relatively large. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980) (where alternatives are "multiplicity of small individual suits" or class action, class action may be the only effective remedy). The amount of each claim is certainly not trivial. Undisclosed dealer upcharges forming the basis of plaintiffs' present claim appear to be something in the range of hundreds to low thousands, a relatively small amount when compared to the cost of litigating each claim on an individual basis. The parties offer no analysis of the class's geographical dispersion or the ability of claimants to bring individual suits. Geographical distribution is likely to be relatively narrow. There is no evidence that this is a situation where the class is composed of ADFC claimants or other members whose poverty would preclude individual action. *See, e.g., Robidoux*, 987 F.2d at 936. Obviously, the members' names are easily ascertainable. The names and addresses of putative class members will appear on the relevant financing paperwork. "Where class members can be easily identified, joinder is more likely to be practicable." *Rowe v. Morgan Stanley Dean Witter*, 191 F.R.D. 398, 416 (D.N.J.1999). The balance of relevant factors indicates that joinder would be impracticable. Plaintiffs satisfy the numerosity requirement.

B. *Commonality*

 Rule 23(a)(2) requires that "questions of law or fact common to the class" be present as a prerequisite to any class action. This provision does not require that all questions of law and fact raised in the case be common. *See Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1106 (5th Cir.1993). The standard is not demanding. "Rule 23(a) simply requires *a* common question of law or fact." *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir.1997). "It is not every common question that will suffice, however; at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality. What we are looking for is a common issue the resolution of which will advance the litigation." *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir.1998). A significant common legal issue exists in whether the failure to identify a dealer's upcharge separate from the "amounts paid to others" violates TILA. Defendant contests commonality, arguing that the presence of oral representations and the need for each plaintiff to show reliance undermine a finding of commonality. While defendant raises substantial issues, they pertain more properly to the predominance question, discussed below in conjunction with the Rule 23(b) requirements. At this point,

the court is satisfied that plaintiffs have established the Rule 23(a) commonality requirement for putative class.

### C. Typicality

The third prerequisite in Rule 23(a) allows a class action to be maintained only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." In order to satisfy the typicality requirement, the class representatives' claims must have the same essential characteristics as the claims of the other members of the class. *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983); *In re Beer Distribution Antitrust Lit.*, 188 F.R.D. 557, 562 (N.D.Cal.1999). "[T]ypicality determines whether a sufficient relationship exists between the injury to the named plaintiff[s] and conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000). The commonality and typicality analyses tend to overlap. *See Rutherford v. City of Cleveland*, 137 F.3d 905, 909 (6th Cir. 1998). The test for typicality, like commonality, is not demanding. *Lightbourn v. County of El Paso, Texas*, 118 F.3d 421, 426 (5th Cir.1997).

Defendant points out that TILA requires that the transaction be primarily for personal, family or household purposes. (Def. Brief at 7, citing 15 U.S.C. § 1602(h)). This point of law is well established. *See, e.g., Riviere v. Banner Chevrolet, Inc.*, 184 F.3d 457, 462 (5th Cir.1999). From this, defendant claims that "there has been no showing on this record how many of the putative class members qualify under TILA." (Plf. Brief at 7). Defendant does not contend that plaintiffs' purchase was not primarily for personal, family or household purposes. Nor does defendant contend that all other purchasers were primarily for business purposes. Plaintiffs' TILA claim appears to be typical of a class of purchasers eligible to recover under TILA. The problem identified by defendant is not with typicality, but with an overbreadth in the class definition. Defendant's argument also highlights a significant problem for analysis under the Rule

23(b) analysis of superiority and predominance: How will plaintiffs demonstrate that each class member's purchase was primarily for personal, family or household purposes?

Without citation of any authority, defendant states, "A myriad of legal and factual issues arise between class representation and the putative class members destroying typicality. The underlying transaction is a contractual one. Thus, questions of oral modification, consent, ratification, novation, and acquiescence arise as to the individual claims of the individual class members." (Def. Brief at 7). The existence of plaintiffs' and other contracts are not disputed. Representations made to plaintiffs and putative class members by defendant's agents prior to their decisions to purchase extended warranties may indeed impact on causation and damages. Again, these questions impact far less upon typicality than on predominance and superiority.

It appears that plaintiffs are typical of a group of purchasers signing contracts with defendant where the written disclosure of amounts paid to others for an extended warranty was not accurate. The fact that the Automobile Retail Installment Contract form utilized in connection with plaintiffs' purchase of their Blazer was not a form generated by defendant, but by plaintiffs' credit union, does not alter this conclusion. The court is satisfied that plaintiffs meet the typicality requirement.

### D. Adequacy of Class Representatives

The final prerequisite to any class action under Rule 23(a) is adequacy of representation. Two separate considerations are relevant with regard to the question of the named plaintiffs' adequacy as representatives of the putative class under FED. R. CIV. P. 23(a)(4). The first is the experience and ability of class counsel. *See Stout*, 228 F.3d at 717. Defendant has raised no concerns in this regard. (Def. Brief at 8). Plaintiffs' attorneys are experienced practitioners in this area. *See Peters v. Cars to Go, Inc.*, 184 F.R.D. 270 (W.D.Mich.1998); *Lozada v. Dale Baker Oldsmobile, Inc.*, 197 F.R.D. 321 (W.D.Mich.2000).

The second consideration involves the existence of possible antagonistic interests between named plaintiffs and absent class members. "Interests are antagonistic when there is evidence that the representative plaintiffs appear unable to vigorously prosecute the interests of the class." *Stout*, 228 F.3d at 717–18. The bedrock requirement of adequacy is that the named representative be a member of the class. *See General Telephone Co.*, 457 U.S. at 156, 102 S.Ct. 2364; *Reid v. White Motor Corp.*, 886 F.2d at 1471. Because of the binding effect of any judgment on absent class members, the adequacy of representation and the absence of conflicts of interest involve the due process rights of absent members. *See Hansberry v. Lee*, 311 U.S. 32, 45, 61 S.Ct. 115, 85 L.Ed. 22 (1940). The adequacy of class representatives in this regard is primarily a factual issue for determination by the trial court. *See Ballan v. Upjohn Co.*, 159 F.R.D. 473, 482 (W.D.Mich. 1994). Defendant does not contest that plaintiffs adequately represent the class. (Def. Brief at 9). The court finds that plaintiffs have satisfied their burden with regard to the adequacy of representation. Plaintiffs have satisfied all the prerequisites under Rule 23(a).

## II. Rule 23(b)

A. *The Supreme Court's Recent Decisions in Amchem and Fibreboard Require That Courts Apply Rule 23(b) With Fidelity to Its Express Terms*

Plaintiffs seek class certification under both Rule 23(b)(2) and 23(b)(3), although they greatly prefer certification under the latter provision. Any analysis must be guided by two recent Supreme Court decisions in which the Court underscored the fundamental differences between mandatory class actions under Rules 23(b)(1) and (b)(2), and "opt-out" class actions under Rule 23(b)(3).

The Supreme Court's decision in *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997), carefully examined the 1966 amendments to the Federal Rules of Civil Procedure creating Rule 23 and the types of class actions authorized under Rule 23(b)(1), (2) and (3). "Rule 23(b)(2) permits class actions for declaratory or injunctive relief where 'the party opposing the class has acted or refused to act on grounds generally applicable to the class.' "[2] The Supreme Court described the third category under Rule 23(b)(3) as the "most adventuresome" innovation. "Rule 23(b) added to the complex-litigation arsenal class actions for damages designed to secure judgments binding all class members save those who affirmatively elected to be excluded." 521 U.S. at 614, 117 S.Ct. 2231.

In *Amchem*, the Supreme Court confronted an attempted expansion of Rule 23(b)(3). In that case, a group of lawyers filed a class action complaint identifying nine lead plaintiffs and members of their families as representing a class of all persons who had not yet filed an asbestos-related lawsuit against certain asbestos manufacturers but who had personally been exposed to asbestos or whose spouse or family member had been so exposed. A stipulated settlement accompanied the pleadings. The stipulation proposed to settle and preclude nearly all class members from litigating against CCR companies all claims not filed before January 15, 1993, involving compensation for present and future asbestos-related personal injury or death. 521 U.S. at 603, 117 S.Ct. 2231. The

---

**2.** Rule 23(b)(1) covers cases in which separate actions by or against individual class members would risk establishing "incompatible standards of conduct for the party opposing the class," Fed. R. Civ. Proc. 23(b)(1)(A), or would "as a practical matter be dispositive of the interests" of non-party class members "or substantially impair or impede their ability to protect their interests," Rule 23(b)(1)(B). Rule 23(1)(A) "takes in cases where the party is obligated by law to treat the members of the class alike (a utility acting toward customers; a government imposing a tax), or where the party must treat all alike as a matter of practical necessity (a riparian owner using water as against downriver owners)." Rule 23(b)(1)(B) includes, for example, "limited fund" cases, instances in which numerous persons make claims against a fund insufficient to satisfy all claims. 521 U.S. at 614, 117 S.Ct. 2231 (citations omitted). The Supreme Court cited civil rights cases against parties charged with unlawful, class-based discrimination as "prime examples," 521 U.S. at 614, 117 S.Ct. 2231, although that has changed somewhat with 1991 amendments expanding relief to include damages as well as injunctive and declaratory relief. *See, e.g., Miller v. Hygrade Food Prods. Corp.*, 198 F.R.D. 638, at 640–42 (E.D.Pa.2001).

district court conditionally certified, under Federal Rule of Civil Procedure 23(b)(3), an encompassing opt-out class. 521 U.S. at 605, 117 S.Ct. 2231. The district court approved "the settling parties' elaborate plan for giving notice to the class." *Id.* at 606, 117 S.Ct. 2231. The district judge rejected objections to the proposed settlement, found that the settlement terms were fair and negotiated without collusion, found that the notice provided was adequate, and approved final class certification under Rule 23(b)(3).

The Third Circuit held that serious intra-class conflicts precluded the class from meeting the adequacy of representation requirement of Rule 23(a)(4). Plaintiffs did not meet the typicality requirement of Rule 23(a)(3). The Third Circuit found that plaintiffs failed to satisfy the predominance and superiority prerequisites of Rule 23(b)(3). The Supreme Court affirmed the Third Circuit's decision. In reaching its conclusion in *Amchem,* the Supreme Court discouraged innovations beyond the carefully balanced structure of Rule 23.[3]

> [O]f overriding importance, courts must be mindful that the Rule as now composed sets the requirements they are bound to enforce. Federal Rules take effect after extensive deliberative process involving many reviewers: a Rules Advisory Committee, public commenters, the Judicial Conference of this Court, the Congress. *See* 28 U.S.C. §§ 2073, 2074. The text of a rule thus proposed and reviewed limits judicial inventiveness. Courts are not free to amend a rule outside the process Congress ordered, a process properly tuned to the instruction that rules of procedure "shall not abridge ... any substantive right." § 2072(b).

521 U.S. at 620, 117 S.Ct. 2231. Federal courts lack authority to substitute Rule 23's certification criteria with standards "never adopted" under the guise that an alternative would be "fair." 521 U.S. at 622, 117 S.Ct. 2231. "Rule 23 must be interpreted with fidelity to the Rules Enabling Act and applied with the interests of absent class members in close view...." 521 U.S. at 629, 117 S.Ct. 2231.

The Supreme Court's recent decision in *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999), emphasized that constitutional due process and Seventh Amendment rights to a jury trial are implicated where a proposed class includes claims for monetary damages. *Fibreboard* involved asbestos litigation. Unlike *Amchem,* the district court had certified the class under Rule 23(b)(1).[4] Like *Amchem,* the Court found that the district court had improperly certified the class. The Supreme Court examined the common characteristics of the cases forming the "pedigree of the limited fund class action as understood by the drafters of Rule 23." 119 S.Ct. at 2311.

The Court found that mandatory class actions on a limited fund theory could be justified "with reference to a 'fund' with a definitely ascertained limit, all of which would be distributed to satisfy all those with liquidated claims based on a common theory of liability by an equitable, pro rata distribution." 119 S.Ct. at 2312. Citing *Amchem,* the Court reiterated that courts must proceed with caution in resolving requests for certification, because of the Rules Enabling Act's mandate that rules of procedure shall not abridge, enlarge or modify any substantive right. 119 S.Ct. at 2314. Furthermore, serious constitutional concerns are at issue in cases involving monetary damages. The Supreme Court found that "the certification of a mandatory class followed by settlement of its action for money damages obviously implicates the Seventh Amendment jury trial rights of absent members." 119 S.Ct. at 2314. "Second, and

---

**3.** The Supreme Court observed that a proposed amendment to Rule 23 that would have authorized settlement class certification had never been adopted. 521 U.S. at 619, 117 S.Ct. 2231.

**4.** "In contrast to class actions brought under subdivision (b)(3), in cases brought under subdivision (b)(1), Rule 23 does not provide for absent class members to receive notice and to exclude themselves from class representation as a matter of right. It is for this reason that such cases are referred to as 'mandatory' class actions." 119 S.Ct. at 2308. A class action under subdivision (b)(2) is also a "mandatory" class action. All persons composing the class become "mandatory" members. There are no provisions in Rule 23(b)(1) or (2) for class members to opt-out of the lawsuit.

no less important, mandatory class actions aggregating damage claims implicate the due process principle of general application in Anglo–American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated a party or to which he has not been made a party by service of process." 119 S.Ct. at 2314–15. "The inherent tension between representative suits and the day-in-court ideal is only magnified if applied to damage claims gathered in a mandatory class. Unlike Rule 23(b)(3) class members, objectors to the collectivism of a mandatory subdivision (b)(1)(B) action have no inherent right to abstain. The legal rights of absent class members ... are resolved regardless of either their consent, or, in a class with objectors, their express wish to the contrary." 119 S.Ct. at 2315.

The Court held that the record on which the district court had rested its class certification did not support the essential premises of mandatory limited fund actions. "It failed to demonstrate that the fund was limited except by agreement of the parties, and it showed exclusions from the class and allocations of assets at odds with the concept of limited fund treatment and the structural protections of Rule 26(a)." 119 S.Ct. at 2316. The Court stated that a "settlement's fairness under Rule 23(e) does not dispense with the requirements of Rule 23(a) and (b)." The Court then warned against the use of mandatory class actions as an expedient in cases where the requirements of Rule 23(b)(3) are not met: "We believe that if allowance for exigency can make a substantial difference in the level of Rule 23 scrutiny, the economic temptations at work on counsel in class actions will guarantee enough exigencies to take the law back be-

fore *Amchem* and unsettle the line between mandatory class actions under subdivision (b)(1)(B) and opt-out actions under subdivision (b)(3)." 119 S.Ct. at 2323.

It is with the recent admonitions of the Supreme Court in *Amchem* and *Fibreboard,* to apply Rule 23 as written, mindful of the careful distinctions between the Rule 23(b)'s subsections, that the court must analyze plaintiffs' motion for certification.[5]

### B. *Plaintiffs' Motion for Class Certification Under Rule 23(b)(3)*

Plaintiffs seek class certification under either Rule 23(b)(2) or Rule 23(b)(3). At oral argument, plaintiffs' counsel acknowledged that the preferred certification was under Rule 23(b)(3). As noted, the difference in certification under these sections is significant. "If an action is to be maintained pursuant to Rule 23(b)(3), absent class members are to be provided with 'the best notice practicable under the circumstances' and an opportunity to exclude themselves from the class." *Becherer v. Merrill Lynch Pierce Fenner & Smith,* 193 F.3d 415, 430 (6th Cir.1999) (Moore J. concurring). Under Rule 23(b)(3), each member of the class must receive notice and an opportunity to opt out and litigate (or not) on his own behalf.[6] *See In re Telectronics Pacing Sys., Inc.,* 221 F.3d 870, 881 (6th Cir.2000); *Jefferson v. Ingersoll Int'l, Inc.,* 195 F.3d 894, 896 (7th Cir.1999). *Lemon v. International Union of Operating Engineers, Local No. 139,* 216 F.3d 577 (7th Cir.2000). Rule 23(b)(3) requires the additional finding that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods

---

5. Federal appellate courts now have a greater ability to address and resolve class action certification issues. Rule 23(f) of the Federal Rules of Civil Procedure, effective December 1, 1998, allows "a court of appeals in its discretion [to] permit an appeal from an order of a district court granting or denying class action certification." FED. R. CIV. P. 23(f); *see Smith v. University of Washington Law School,* 233 F.3d 1188, 1196 (9th Cir.2000).

6. Rule 23(c)(2) states, "In any class action maintained under subdivision (b)(3), the court shall

direct to members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude the member from the class if the member so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion, may, if the member desires, enter an appearance through counsel."

for the fair and efficient adjudication of the controversy. FED.R.CIV.P. 23(b)(3).[7]

### 1. Predominance of Common Questions

■ These predominance and superiority "requirements reflect the fact that special caution must be exercised in class actions of this type because of the loose affiliation among the class members, which is thought to magnify the risks inherent in any representative action. Thus, the draftsmen of the rule have imposed an obligation on the court to make findings that will demonstrate the utility and propriety of employing the class action device in the case before it." 7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, AND MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL, § 1777 at 518 (2d ed.1986). The predominance test involves "an attempt to achieve a balance between the value of allowing individual actions to be instituted so that each person can protect his own interests and the economy that can be achieved by allowing a multiple party dispute to be resolved on a class action basis." *Id.* at 519. In determining whether common issues predominate, the court "is under a duty to evaluate the relationship between the common and individual issues," taking a pragmatic approach to determine the relative weight and importance of the common and individual issues. *Id.,* § 1778.

Initially, plaintiffs argue that in making a determination regarding predominance, "the merits are irrelevant." (Plf. Reply Brief at 1–2, docket # 20). Plaintiffs cite the so-called *"Eisen* rule," which purportedly prohibits examination of the merits of the plaintiff's case in connection with class certification. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). The *"Eisen* rule," rests upon a single sentence found in the *Eisen* case: "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but whether the requirements of Rule 23 are met." *Eisen,* 417

U.S. at 178, 94 S.Ct. 2140. Plaintiffs' conclusion is made possible only by a misreading of a single sentence in *Eisen,* coupled with a disregard of subsequent Supreme Court authority. The *Eisen* Court simply found that the district court's method of conducting a hearing, making a finding that plaintiff was "more than likely to prevail on the merits," and then attempting to shift the cost of notifying class members to the defendants, was improper. It was in the context of disapproving the trial court's allocation of costs on the basis of likelihood of success on the merits that the Supreme Court made the statement that has blossomed into the *"Eisen* rule."

The *Eisen* rule represents a gross over-reading of the Supreme Court's comment concerning examination of the merits of a class action case. Since *Eisen,* the Supreme Court has repeatedly recognized that "the class determination generally involves considerations that are enmeshed in factual and legal issues comprising the plaintiff's cause of action." *General Tel. Co. v. Falcon,* 457 U.S. at 155, 102 S.Ct. 2364. " 'Evaluation of many questions entering into determination of class action questions is intimately involved with the merits of the claims. The typicality of the representative's claims or defenses, the adequacy of the representative, and the presence of common questions of law and fact are obvious examples. The more complex determinations required in Rule 23(b)(3) class actions entail even greater entanglement with the merits....' " *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 469 n. 12, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978) (quoting 15 C. WRIGHT, A. MILLER, & E. COOPER, FEDERAL PRACTICE & PROCEDURE, § 3911, p. 485 n. 45 (1976)).

Consequently, numerous courts recognize the virtual necessity of examining issues related to the merits of a case when making a class determination. The *Eisen* language "should not be talismanically invoked to artificially limit a trial court's examination of the factors necessary to a reasoned determi-

---

**7.** Rule 23(b)(3) allows a class action to be maintained if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only

individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3).

nation of whether" plaintiffs have met their "burden of establishing each of the Rule 23 class action requirements." *Love v. Turlington,* 733 F.2d 1562, 1564 (11th Cir.1984). "After all, a district court must formulate some prediction to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." *Waste Mgmt. Holdings, Inc. v. Mowbray,* 208 F.3d 288, 298 (1st Cir. 2000). The Sixth Circuit has likewise rejected reliance on *Eisen* as a reason to limit the rigorous inquiry required of the court to determine whether class certification is appropriate. *See Thompson v. County of Medina,* 29 F.3d 238, 240–41 (6th Cir.1994); *accord, Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.,* 149 F.R.D. 65, 73 (D.N.J. 1993) (collecting cases). Although the issues may sometimes be "plain enough from the pleadings," "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *General Tel. Co.,* 457 U.S. at 160, 102 S.Ct. 2364. This is such a situation. In the circumstances of this case, the court can and must conduct a preliminary inquiry into the nature of plaintiffs' TILA claim, the elements, and burdens of proof in order to determine whether common issues truly will predominate.

The TILA claim is plaintiffs' only federal claim in their First Amended Complaint. The claim is based on an alleged violation of 15 U.S.C. § 1638(a)(2)(B)(iii) by defendant's failure to properly itemize the amounts paid to third parties on plaintiffs' behalf. The seminal case in this area is *Gibson v. Bob Watson Chevrolet–Geo, Inc.,* 112 F.3d 283 (7th Cir.1997). In that case, the Seventh Circuit consolidated appeals from three class action lawsuits asserting TILA violations by Chicago-area car dealers. The three consolidated appeals were from district court dismissals of claims similar to that asserted by plaintiffs in the present case: an alleged TILA violation arising from the failure to disclose an "upcharge" retained by the dealer. The Seventh Circuit found the complaints stated two possible TILA violations. The first was based on alleged unequal charges against cash and credit customers for the same warranty, resulting in a hidden "finance charge." Plaintiffs' first amended complaint does not contain any factual allegations supporting this type of claim.

The second TILA violation observed by the Seventh Circuit in *Gibson v. Bob Watson Chevrolet* was the type plaintiffs allege in this case: a false representation in the itemization.

> Second, the Act requires the lender or creditor to provide "a written itemization of the amount financed," including "each amount that is or will be paid to third persons by the creditor [the dealer here] on the consumer's behalf, together with an identification of or reference to the third person." 15 U.S.C. § 1638(a)(2)(B)(iii). The argument that Bob Watson Chevrolet (as before, we're using Gibson's case as typical of all three cases) violated this provision is straightforward, and let us start with it. The amount to be paid to North American on Gibson's behalf is not stated correctly in the written itemization of the amount financed that Gibson received. It is true that a consumer is not entitled to the statement unless he makes a written request for it, § 1638(a)(2)(B); 12 C.F.R. 226.18(c)(2), and there is no indication that Gibson did. But the creditor is allowed to skip this stage and simply provide the itemization of the amount financed without being asked for it. 12 C.F.R. Pt. 226, Supp. I § 18(c)(1). That appears to be what Bob Watson Chevrolet did. In any event, it furnished the itemization, and the itemization contains a false representation.

112 F.3d at 285. "Section 1638(a)(2)(B)(iii) is free-standing. It requires disclosure—meaning, we do not understand the defendants to deny, *accurate* disclosure, *Fairley v. Turan–Foley Imports, Inc.,* 65 F.3d 475, 479 (5th Cir.1995)—of amounts paid to third persons by the creditor on the consumer's behalf, whether or not cash customers pay less. Bob Watson Chevrolet did not accurately disclose the amount that it paid North American for the extended warranty on the car that Gibson purchased. It said it paid $800, in fact it paid less." 112 F.3d at 285. The court observed that the violations were not "entirely technical." "The consumer would have a greater incentive to shop around for

an extended warranty, rather than take one offered by the dealer, if he realized that the dealer was charging what the defendant's lawyer described as a 'commission' and apparently a very sizable one, for its efforts in procuring the warranty from a third party. Or the consumer might be more prone to haggle than if he thought the entire fee had been levied by a third party and was so outside the dealer's direct control. Or he might go to another dealer in search of lower mark-ups on third-party charges." 112 F.3d at 286.

The issue before the Seventh Circuit in *Gibson v. Bob Watson Chevrolet* was limited to whether the complaints stated viable TILA claims, not whether a class action or actions should be certified. The latter portion of the decision did provide guidance to the lower courts, however, on the question of available damages. The court described the "failure-to-itemize claim" as a "stronger" claim than the "undisclosed markup as a finance charge," but observed that the failure-to-itemize claim did not permit "as large an award of damages." 112 F.3d at 286 (citing 15 U.S.C. § 1640(a) without further explanation).

Section 1640 is TILA's civil liability section. It states in pertinent part as follows:

(a) Individual or class action for damages; amount of award; factors determining amount of award

Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part, including any requirement under section 1635 of this title, or part D or E of this subchapter with respect to any person is liable to such person in amount equal to the sum of—

(1) any actual damage sustained by such person as a result of the failure;

(2)(A)(i) in the case of an individual action twice the amount of any finance charge in connection with the transaction

\* \* \*

(B) in the case of a class action, such amount as the court may allow, except that as to each member of the class no

minimum recovery shall be applicable, and the total recovery under this subparagraph in any class action or series of class actions arising out of the same failure to comply by the same creditor shall not be more than the lesser of $500,000 or 1 per centum of the net worth of the creditor

(3) in the case of any successful action to enforce the foregoing liability . . ., the costs of the action, together with a reasonable attorney's fee as determined by the court

\* \* \*

*In connection with the disclosures referred to in section 1638 of this title, a creditor shall have a liability determined under paragraph (2) only for failing to comply with the requirements of section 1635 of this title or of paragraph (2) (insofar as it requires disclosure of the "amount financed").*

Statutory damages under section 1640(a)(2) "may be recovered only as to certain types of TILA violations, and § 1638(a)(2)(B)(iii) is not one of them." *Kent v. Celozzi–Ettleson Chevrolet, Inc.*, No. 99 C 2868, 1999 WL 1021044, at \* 8 (N.D.Ill. Nov. 3, 1999). "The only part of § 1638(a)(2) that gives rise to a right to statutory damages under § 1640(a)(2) is that concerning disclosure of the amount financed." 1999 WL 1021044, at \* 8 n. 2.

In its subsequent decision in *Brown v. Payday Check Advance, Inc.*, 202 F.3d 987, 992 (7th Cir.2000), the Seventh Circuit expressly stated the holding that had been implicit in its earlier *Bob Watson* decision. "We hold that § 1640(a) means what it says, that "only" violations of the subsections specifically enumerated in that clause support statutory damages." 202 F.3d at 992.

The Eighth Circuit's recent decision in *Peters v. Jim Lupient Oldsmobile Co.*, 220 F.3d 915, 917 (8th Cir.2000), held that the "only remedy" for a failure-to-itemize violation of section 1638(a)(2)(B)(iii) is actual damages. "Statutory damages are only available for violations of § 1638(a)(2) in those cases where the amount financed was not dis-

closed." 220 F.3d at 916. The court held that in order to establish actual damages, the plaintiff was required to show that the TILA violation was the proximate cause of any actual damages. 220 F.3d at 917. The Eighth Circuit held that, "In order to show causation, a plaintiff must show that: (1) he read the TILA disclosure statement; (2) he understood the charges being disclosed; (3) had the disclosure statement been accurate, he would have sought a lower price; and (4) he would have obtained a lower price." 220 F.3d at 917.[8]

In light of the need to prove causation for each TILA plaintiff in a case for actual damages, individual issues predominate. Circuit courts, including the Sixth Circuit, are in agreement that district courts do not abuse their discretion in refusing to certify TILA actions for actual damages. In *Stout v. J.D. Byrider*, 228 F.3d 709 (6th Cir.2000), the Sixth Circuit upheld a district court's refusal to certify a TILA class action under Rule 23(b)(3). The Sixth Circuit stated as follows with regard to Rule 23(b)(3) predominance.

We similarly agree with the district court's conclusion that Plaintiffs failed to meet the requirement of Rule 23(b) that common issues predominate over individual issues. *See* Fed.R.Civ.P. 23(b). In this case, the district court determined that the factual core of the case was whether each putative class member relied upon false representations or failures to disclose, and if so, what damages were proximately caused by that reliance. We find that this determination did not constitute an abuse of discretion by the district court in light of the fact that any resolution of the fraud or the TILA claims requires an individual assessment of what documents the customer reviewed and in what manner, what representations Defendants made to each customer, and whether the customer selected the extended service agreement.

*See Castano v. American Tobacco Co.*, 84 F.3d 734, 745 (5th Cir.1996) ("[A] fraud class action cannot be certified when individual reliance will be an issue.").

228 F.3d at 718.

In *Perrone v. General Motors Acceptance Corp.*, 232 F.3d 433 (5th Cir.2000), the Fifth Circuit affirmed the district court's decision refusing to certify a class action on a TILA actual damages claim. Class certification was not appropriate because detrimental reliance was necessary to prove actual damages. The court engaged in an extended discussion of the difference between actual and statutory damage claims under TILA. "According to its plain meaning, the statutory remedy of 'actual damages' in section 1640(a)(1) requires a direct causal relationship between the amount of damages and the injury or harm. That the 'actual damages' must be 'sustained by such person as a result of the failure' links the loss to the failure to disclose. 15 U.S.C. § 1640(a)(1). Actual damage is thus sustained as a result of failure to disclose under the statute if a consumer can show that, had he been properly informed, he would have engaged in a different or less expensive transaction." 232 F.3d at 436. The Fifth Circuit observed that "the only other circuit decision on this issue [held] that detrimental reliance is an element of causation in an actual damages award under § 1640, the Eighth Circuit [holding] that a plaintiff must prove that the 'TILA violation was the proximate cause of any actual damages.'" 232 F.3d at 437 (quoting *Jim Lupient Oldsmobile*, 220 F.3d at 917). The Fifth Circuit also noted that the "overwhelming majority of district courts to address the issue have held that detrimental reliance is an element of actual damages." 232 F.3d at 438.[9]

On February 22, 2001, the date the court heard argument on plaintiffs' motion to certify, the Eleventh Circuit issued its *en banc*

8. *See also Swanagan v. Al Piemonte Ford Sales, Inc.*, Nos. 94 C 4070, 94 C 5688, 1999 WL 515482, at *3–4 (N.D.Ill. July 12, 1999); *Cirone–Shadow v. Union Nissan at Waukegan*, 955 F.Supp. 938, 943 (N.D.Ill.1997); *accord Galloway v. Long Beach Mort. Co.*, 220 B.R. 236, 245 (Bankr.E.D.Pa.1998) (failure to itemize claim limited to actual damages).

9. The cases cited as examples by the Fifth Circuit in *Perrone* were as follows: *Anderson v. Rizza Chevrolet, Inc.*, 9 F.Supp.2d 908, 913 (N.D.Ill. 1998); *Barlow v. Evans*, 992 F.Supp. 1299, 1310 (M.D.Ala.1997); *Cirone–Shadow v. Union Nissan of Waukegan*, 955 F.Supp. 938, 943 (N.D.Ill. 1997); *McCoy v. Salem Mortgage Co.*, 74 F.R.D. 8, 12 (E.D.Mich.1976). 232 F.3d at 438 n. 4.

decision in *Turner v. Beneficial Corp.*, 242 F.3d 1023 (11th Cir.2001) (*en banc*). The *en banc* decision in *Turner* overruled prior Eleventh Circuit cases such as *Jones v. Bill Heard Chevrolet, Inc.*, 212 F.3d 1356, 1363 (11th Cir.2000), which had endorsed a "minority position" allowing actual damages under TILA without requiring a showing of detrimental reliance by the plaintiff. The *en banc* decision in *Turner* affirmed a district court decision denying class certification under Rule 23(b)(3) of Turner's TILA claim for actual damages.

Two decisions from this court cited by plaintiff are *Peters v. Cars to Go, Inc.*, 184 F.R.D. 270 (W.D.Mich.1998), and *Lozada v. Dale Baker Oldsmobile, Inc.*, 197 F.R.D. 321 (W.D.Mich.2000).[10] These decisions were rendered without the guidance provided by the Sixth Circuit in *Stout*, the Eighth Circuit decision in *Peters v. Jim Lupient Oldsmobile Co.*, 220 F.3d 915, 917 (8th Cir.2000), the Fifth Circuit decision in *Perrone v. General Motors Acceptance Corp.*, 232 F.3d 433 (5th Cir.2000), and the Eleventh Circuit's *en banc* decision in *Turner v. Beneficial Corp.*, 242 F.3d 1023 (11th Cir.2001) (*en banc*). Only the *Peters v. Cars to Go* decision involved the same type of failure-to-itemize claim asserted by plaintiffs.

In the *Cars to Go* case, Judge Quist, not having the advantage of subsequent case law development, did not appreciate that plaintiffs' itemization claims under 15 U.S.C. § 1638(a)(2)(B)(iii) were limited to actual damages. Judge Quist's analyses of Rule 23(b)(3) predominance and superiority are therefore of limited utility. The opinion contains no discussion of the requirement that each plaintiff show actual damages. Judge Quist found that the "primary legal issue" would be whether the defendant's itemization practices, which were applied in the same manner to all class members, violated TILA. 184 F.R.D. at 280. The superiority discussion did not mention the practical difficulties likely to be encountered in the management of multiple actions requiring proof of actual damages and causation on each plaintiff's claim.

Plaintiffs rely strongly on the principle that the necessity that each plaintiff prove the amount of his or her damages is generally not an impediment to class certification. This rule is unobjectionable, but plaintiffs' argument misses the mark. In the present case, each plaintiff must prove, in addition to the amount of damages, causation in fact and reliance. *Peters*, 220 F.3d at 917. Given the plaintiffs' TILA burden of proving proximate cause and actual damages, proof at trial must necessarily focus on whether each individual plaintiff read the TILA disclosure statement, whether each understood the charges being disclosed, whether each would have sought a lower price if the disclosure statement been accurate, whether there was a lower price available at the time, and whether the person would have obtained that price. Common issues do not predominate where, as here, the focus must be on minute aspects of individual transactions in order to establish liability. *See e.g., Basic, Inc. v. Levinson*, 485 U.S. 224, 242, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988); *Miller v. Hygrade Food Prods. Corp.*, 198 F.R.D. 638 (E.D.Pa. 2001) (Title VII claims for damages could not be certified under either Rule 23(b)(2) or (b)(3)); *Burrell v. Crown Central Petroleum, Inc.*, 197 F.R.D. 284 (E.D.Tex.2000) (Title VII claims for compensatory and punitive damages required individualized proof making certification improper under Fed.R.Civ.P. 23(b)(2) and (b)(3)); *Krieger v. Gast*, 197 F.R.D. 310, 320 (W.D.Mich.2000) (refusing to certify Rule 23(b)(3) class because state-law fraud claim required proof of individual reliance by class members) (collecting cases); *Yadlosky v. Grant Thornton L.L.P.*, 197 F.R.D. 292, 298–99 (E.D.Mich.2000) (motion for Rule 23(b)(3) certification denied in securities fraud action where individualized proof of reliance would predominate); *In re Synergen, Inc. Sec. Lit.*, 154 F.R.D. 265, 267 (D.Colo.1994) (declining to certify state-law fraud claims for class-

---

**10.** Senior District Judge Douglas W. Hillman's decision in *Lozada v. Dale Baker Oldsmobile, Inc.*, 197 F.R.D. 321 (W.D.Mich.2000), requires little discussion. It was a TILA and state-law action based upon the dealer's failure to provide customers with a copy of the finance contract at the time of its execution. 197 F.R.D. at 327. The *Dale Baker* case did not involve any itemization claim under 15 U.S.C. § 1638(a)(2)(B)(iii).

action treatment because of necessity for separate trials on reliance). Where numerous mini-trials are necessary to resolve individual questions of reliance and causation, the benefits of a class action disappear. If individual proof on these issues is necessary, common questions will not predominate. It is entirely appropriate to refuse to certify a Rule 23(b)(3) class action where individual proof of reliance would be necessary, thus creating an unmanageable lawsuit in which numerous "mini-trials" on the issue of reliance and damages would overwhelm the common issues. *See O'Neil v. Appel,* 165 F.R.D. 479, 498 (W.D.Mich.1996); *Zlotnick v. T.I.E. Communications, Inc.,* 123 F.R.D. 189 (E.D.Pa.1988). The court finds that individualized questions of fact would predominate over common issues at trial.

Further undermining predominance of common issues is the fact that TILA's scope is limited to transactions "primarily for personal, family or household purposes." 15 U.S.C. § 1602(h). Plaintiffs must prove that each individual purchase was made "primarily for personal, family or household" rather than business purposes.[11]

Another barrier to finding that common issues predominate is TILA's one-year statute of limitations. The Sixth Circuit addressed this problem in *Butler v. Sterling, Inc.,* No. 98–3223, 2000 WL 353502 (6th Cir. Mar. 31, 2000). In *Butler,* the Sixth Circuit affirmed a district court decision refusing to certify a TILA class action under Rule 23(b)(2) and (b)(3).

> TILA provides for a one year statute of limitations. 15 U.S.C. § 1640(e). This circuit has held the one-year clock for a TILA cause of action begins to run when a plaintiff "discovered or had reasonable opportunity to discover the fraud involving the claimed TILA violation." *Jones v. Trans-Ohio Sav. Ass'n,* 747 F.2d 1037, 1041 (6th Cir.1984) ... Given the significant probability that the extent of the defendants' liability would depend on each class member, who purchased ... before May 1994

discover[ed] or "had reasonable opportunity to discover" the defendants' alleged misconduct, the district court held that class certification under 23(b)(3) was inappropriate as individualized liability questions would predominate over common questions of law or fact.

2000 WL 353502, at * 7. The Sixth Circuit found that the district court did not abuse its discretion in refusing to certify the class. *See also Kelley v. Galveston Autoplex,* 196 F.R.D. 471, 477–78 (S.D.Tex.2000).

In summary, common questions do not predominate in this case because (1) each plaintiff must prove reliance and causation; (2) each plaintiff must prove that the automobile purchase was for personal, family or household use; and (3) each plaintiff's action would present unique factual issues regarding the statute of limitations. Plaintiffs have failed to show predominance under Rule 23(b)(3).

### 2. Superiority

A representative plaintiff seeking to invoke Rule 23(b)(3) must show that a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3). The drafters of the rule point the court to several factors to be considered regarding this issue, including the interest of class members in controlling separate actions, the extent and nature of other lawsuits already commenced, the desirability of concentrating the litigation in a particular forum, and difficulties likely to be encountered in the management of the class action. FED. R. CIV. P. 23(b)(3)(A)-(D). These factors naturally are interdependent and overlapping both among themselves and with the prerequisites to a class action prescribed in Rule 23(a). *See* 7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1780 at 562. These issues, and especially the manageability inquiry, encom-

---

**11.** Even before the Supreme Court's *Amchem* and *Fibreboard* decisions, some courts found that "the difficulties inherent in such a determination are self-evident" and are sufficient alone "to deny the otherwise advantageous use of the class

action mechanism." *Fetta v. Sears, Roebuck & Co.,* 77 F.R.D. 411, 414 (D.R.I.1977); *Bantolina v. Aloha Motors, Inc.,* 419 F.Supp. 1116 (D.Haw. 1976).

pass the whole range of practical problems that may render the class action format inappropriate in a particular case. *Id.; see Eisen v. Carlisle & Jacquelin,* 417 U.S. at 164, 94 S.Ct. 2140.

In arguing for a finding of superiority, plaintiffs cite decisions indicating that TILA cases are particularly well-suited for class action treatment. There is no dispute with this innocuous proposition. If statutory damages had been available to plaintiff on a failure-to-itemize TILA theory, without the requirements of detrimental reliance and proof of actual damages, Rule 23(b)(3) certification would be entirely appropriate. The fact remains, however, that courts do not certify classes in every TILA case, and increasingly refuse to do so in actual damage cases such as plaintiffs'. *See, e.g., Swanagan v. Al Piemonte Ford Sales, Inc.,* Nos. 94 C 4070, 94 C 5688, 1999 WL 515482 (N.D.Ill. July 12, 1999). Denial of Rule 23(b)(3) class certification in this case does not mean that the parties and the judicial system must tolerate numerous, duplicative lawsuits, all designed to adjudicate the liability of Courtesy Motors, Inc. If groups of other purchasers are so inclined, they can bring their own lawsuits. Even in the absence of class certification, if plaintiffs prevail on their own TILA claims, that judgment would likely provide issue preclusion for subsequent TILA cases against defendant in either state or federal court. "In federal question actions, the [claim preclusion] doctrine not only bars a party from re-litigating previously decided issues against its former opponent, it also may be used 'offensively' to establish the claim of a plaintiff in a subsequent suit who was not a party to the prior action." *Trustees of the B.A.C. Local 32 Ins. Fund v. Silveri,* 78 F.Supp.2d 670, 681 (E.D.Mich. 2000) (citing *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)). In light of this, the superiority of submitting 200 claims to the same jury, with individualized proofs for each, is not apparent to this court.

### C. Plaintiffs' Motion For Certification Under Rule 23(b)(2)

Alternatively, plaintiffs seek certification under Rule 23(b)(2). Rule 23(b)(2) states that an action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition, "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the class as a whole." FED. R. CIV. P. 23(b)(2). It is clear that claims for injunctive and declaratory relief can be certified where appropriate under Rule 23(b)(2). However, plaintiffs' claims are not limited to injunctive and declaratory relief. Plaintiffs seek monetary damages for defendant's alleged TILA violations. Rule 23(b)(2) expressly includes "declaratory" and "injunctive" relief, but it makes no mention of damages.

It remains an unresolved issue in the Supreme Court and the Sixth Circuit whether Rule 23(b)(2) can ever be used to certify an action where, as here, plaintiffs seek monetary damages. The Sixth Circuit's only discussion of the issue appears in *Butler v. Sterling, Inc.,* No. 98–3223, 2000 WL 353502 (6th Cir. Mar. 31, 2000). In *Butler,* the Sixth Circuit observed that, "Although the issue has not yet been squarely presented to the Supreme Court, the Court has expressed serious reservations about the propriety of certifying a 23(b)(2) class when compensatory or punitive damages are in issue, due to lack of notice to class members or the opportunity for those members to 'opt out' of the class action." 2000 WL 353502, at \* 6 (citing *Ticor Title Ins. Co. v. Brown,* 511 U.S. 117, 120–21, 114 S.Ct. 1359, 128 L.Ed.2d 33 (1994)).

Relying on Advisory Committee notes rather than the text of Rule 23(b)(2), some courts have created a narrow category of cases where a Rule 23(b)(2) class can be certified if all other requirements are met and the "predominant" relief sought by plaintiffs is injunctive or declaratory relief. "The Advisory Committee notes on Rule 23 state that certification under (b)(2) 'does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages.'" *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 411 (5th Cir.1998) (quoting Rule 23 Advisory Committee

Notes). In *Allison v. Citgo,* the Fifth Circuit held that "monetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief." 151 F.3d at 415. By incidental, the Fifth Circuit stated that it meant only the following:

> damages that flow directly from liability to the class as a whole forming the basis of the injunctive or declaratory relief. Ideally, incidental damages should be only those to which class members automatically would be entitled once liability to the class (or subclass) as a whole is established. That is, the recovery of incidental damages should typically be concomitant with, not merely consequential to, class-wide injunctive or declaratory relief. Moreover, such damages should at least be capable of computation by means of objection standards and not dependent in any significant way on intangible, subjective differences of each class member's circumstances. Liability for incidental damages should not require additional hearings to resolve the disparate merits of each individual's case; it should neither introduce new and substantial legal or factual issues, nor entail complex individualized determinations. Thus, incidental damages will, by definition, be more in the nature of a group remedy, consistent with the forms of relief intended for (b)(2) class actions.

151 F.3d at 415 (citations omitted). The Fifth Circuit upheld the district court's decision denying a motion to certify a class under Rule 23(b)(2) because monetary damages were the predominant[12] relief sought.

More recently, in *Bolin v. Sears, Roebuck & Co.,* 231 F.3d 970 (5th Cir.2000), the Fifth Circuit stated that "Rule 23(b)(2) contains two requirements: (1) behavior generally applicable to the class as a whole; (2) injunctive relief predominates over damages sought." 231 F.3d at 975. In *Bolin,* the Fifth Circuit held that a district court abused its discretion in certifying class actions under Rule 23(b)(2). The court emphasized that, "To determine whether damages predominate, a court should certify a class on a claim-by-claim basis." 231 F.3d at 976. The Fifth Circuit found a district court had abused its discretion in certifying a class with respect to claims under five statutes: TILA, RICO, Fair Debt Collection Practices Act, the automatic stay provision of the Bankruptcy Act, and the Declaratory Judgment Act. Upon the TILA action, the court found that plaintiff's actual damage claims required individualized proof. 231 F.3d at 978. The *Bolin* court also found that "the mere recitation of a request for declaratory relief cannot transform damages claims into a Rule 23(b)(2) class action." 231 F.3d at 978. "The extent to which declaratory relief sought satisfies Rule 23(b)(2) is thus no greater than the extent to which the substantive statutes underlying the claim for declaratory relief satisfy Rule 23(b)(2). Since certification under none of the underlying statutes was proper, certification with respect to the DJA [Declaratory Judgment Act] was also an abuse of discretion." 231 F.3d at 979.

The Seventh Circuit adopted the *Allison* standard for Rule 23(b)(2) certification in *Jefferson v. Ingersoll, Inc.,* 195 F.3d 894, 898–99 (7th Cir.1999) (vacating Rule 23(b)(2) certification, emphasizing that "the district court must squarely face the [Rule 23(b)(2) ] question whether the monetary damages sought by the plaintiff class are more than incidental to the equitable relief"); *see also Lemon v. International Union of Operating Engineers, Local No. 139,* 216 F.3d 577, 580–81 (7th Cir.2000) (same).

In its *Butler v. Sterling, Inc.* decision, the Sixth Circuit was careful to point out that it had never expressly endorsed the approach taken by *Allison* and progeny allowing monetary damages in a Rule 23(b)(2) class.[13] "Even accepting the proposition that, in some

---

12. The *Allison* decision noted that while prominent commentators, including 7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 1775 (2d ed.1986), had taken the position that determining whether one form of relief actually predominates in some quantifiable sense was a wasteful and impossible task that should be avoided, the court was "bound" to apply the standard established by the Rule and Advisory Committee note. 151 F.3d at 412.

13. In a footnote in her concurring opinion in *Becherer v. Merrill Lynch,* 193 F.3d at 430 n. 1, Judge Karen Nelson Moore, citing a civil procedure hornbook, wrote that certification would

cases, compensatory and/or punitive damages may be recoverable by a 23(b)(2) class—an issue undecided in this circuit—all other circuits that have considered the issue have held that certification of a 23(b)(2) class turns on whether injunctive and/or declaratory relief sought on behalf of the class 'predominate[s]' relative to any incidental monetary damages requested." 2000 WL 353502, at *6 (citing *Allison*, 151 F.3d at 410).

Even assuming that a Rule 23(b)(2) class may be certified where "incidental damages" are sought in addition to declaratory and injunctive relief, plaintiffs' claim for actual damages under TILA does not fit within the narrow definition of incidental damages. In the present case, it is patent that plaintiffs' predominant claim is for money damages. Certification of a mandatory class under Rule 23(b)(2) would contravene the clear teaching of the Supreme Court's decisions in *Amchem* and *Fibreboard*. The court may not use a mandatory Rule 23(b)(2) class as an expedient to circumvent the requirements of Rule 23(b)(3), where the case is principally one for money damages. *Fibreboard*, 119 S.Ct. at 2323. Consequently, plaintiffs fail to satisfy any of the alternative requirements of Rule 23(b) for class certification.

## III. Supplemental Jurisdiction

 The statutory basis for this court's supplemental jurisdiction over state-law claims is established by 28 U.S.C. § 1367. Section 1367(a) states that, "Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." In turn, subsection (c)(1) provides that a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—(1) the claim raises a novel or complex issue of State law." "[D]istrict courts have broad discretion in

deciding whether to exercise supplemental jurisdiction." *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 196 F.3d 617, 620 (6th Cir.1999). The Sixth Circuit reviews district court decisions whether to exercise supplemental jurisdiction under an abuse of discretion standard. *See Weeks v. Portage County Executive Offices*, 235 F.3d 275, 279 (6th Cir.2000); *Campanella v. Commerce Exch. Bank*, 137 F.3d 885, 892 (6th Cir.1998). The district court's discretion is informed by factors of judicial economy, convenience, fairness and comity. 196 F.3d at 620. When facing novel or complex state law, district courts are to be cognizant that there may be "nuances" of state law better left for resolution in the first instance by the state courts. *See Cooper v. Parrish*, 203 F.3d 937, 953 (6th Cir.2000); *see also Drew v. University of Tennessee Regional Medical Center Hosp.*, No. 99–5070, 2000 WL 572064, at *5 (6th Cir. May 1, 2000) (finding that it was "entirely appropriate for the district court to decline to exercise supplemental jurisdiction" over a claim raising a novel question of state law). The "obscurity or paucity of pertinent state judicial precedent [ ] argue[s] in favor of deferring in favor of the state courts." *Scott v. Long Island Sav. Bank, FSB*, 937 F.2d 738, 742 (2d Cir.1991).

 Although plaintiffs have asserted claims under a number of state statutes, there is not a single published state-court opinion on point. Plaintiffs contend that defendant's actions violated the provisions of the Michigan Consumer Protection Act prohibiting unfair, deceptive and confusing practices. No state court has held that a defendant's failure to separately itemize the dealer's upcharge on a vehicle service contract violates the MCPA. It appears that the only authority on this issue of state law is Judge Quist's unpublished "Memorandum Order" in *Peters v. Cars To Go, Inc.*, 1:97cv 920 (W.D.Mich. Mar. 17, 1999), finding a MCPA violation. Judge Quist's decision on the MCPA issue was never subjected to the test of appellate review, as the case was settled on March 6, 2000. There are no state or federal court decisions addressing the theories of liability asserted in plaintiffs' remaining state-law claims. Plaintiffs allege that defendant violated the Michigan Motor

have been inappropriate under Rule 23(b)(2) be-

cause "plaintiffs principally sought damages."

Vehicle Installment Sales Contract Act by violating section § 566.302 of the Michigan Compiled Laws. For their Michigan Motor Vehicle Sales Finance Act claim, plaintiffs contend that defendant violated MICH. COMP. LAWS §§ 492.113, 492.131. Finally, with regard to their Michigan Credit Reform Act claim, plaintiffs rely on MICH. COMP. LAWS §§ 445.1852(f), 445.1856, 445.1861(1), and 445.1861(3) as their basis for the claimed violation. Each of these claims would require the court to apply a Michigan statute in an unprecedented fashion, with no guidance from any Michigan appellate court. Sales of extended warranties or motor vehicle service contracts are commonplace. Comity cautions that a federal court should not be the first court to step in and create new state-law liability. Economy, convenience and fairness also weigh against burdening this federal action with an excess overlay of state law. In its discretion, pursuant to 28 U.S.C. § 1367(c)(1), the court declines to exercise supplemental jurisdiction over plaintiffs' state-law claims. Plaintiffs' state-law claims will be dismissed without prejudice.

### Conclusion

For the reasons stated herein, plaintiffs' motion for class certification will be denied.